IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  JODI BECHTOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-15-65-KEW |
| | ) | |
| 1.  EASTAR HEALTH SYSTEM, | ) | |
| d/b/a MUSKOGEE REGIONAL | ) | |
| MEDICAL CENTER, LLC, | ) | |
| and | ) | |
| 2.  CAPELLA HEALTHCARE INC., | ) | |
| d/b/a MUSKOGEE REGIONAL | ) | |
| MEDICAL CENTER, | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Jodi Bechtold, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1. Plaintiff, Jodi Bechtold, is an adult female resident of Muskogee County, Oklahoma.

2. Defendants are:

    a. Eastar Health System, d/b/a Muskogee Regional Medical Center, LLC ("Eastar"), an entity doing business in Muskogee County, Oklahoma; and

    b. Capella Healthcare Inc., d/b/a Muskogee Regional Medical Center, LLC ("Capella"), an entity doing business in Muskogee County, Oklahoma.

1

**JURISDICTION AND VENUE**

3. This is a cause of action arising out of Plaintiff's former employment with Defendants based on claims of (a) gender discrimination, sexual harassment, the creation of a sexually hostile work environment, and retaliation which is prohibited by Title VII of the Civil Rights Act of 1964, as amended, and (b) negligent training, supervision and retention.

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the actions complained of herein occurred in Muskogee County, Oklahoma. Defendants are doing business in such county and may be served in said county. Muskogee County is located in the Eastern District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 30, 2014. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated December 18, 2014 (received by Plaintiff by mail thereafter), and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

**STATEMENT OF FACTS**

7. Plaintiff began her employment with Defendants at Muskogee Regional in or around July 2012 as a Medical Records Clerk at Defendants' main campus. In or around December 2012, Plaintiff transferred to Defendants' east campus. Throughout Plaintiff's employment, her performance was at least satisfactory, if not excellent.

8. In or around March 2014, Custodian Andy Lyons (who is male) began making offensive and unwelcome sexually inappropriate comments to Plaintiff, creating a sexually hostile working environment for Plaintiff. Up to that point in time, Plaintiff had only interacted with Lyons in a cordial manner. However, Plaintiff was aware that Lyons had previously had sexual relationships with one or more of Defendants' employees while at work.

9. Lyons' comments included but were not limited to the fact that he thought Plaintiff's feet were sexy, that her husband was a lucky man, that if Plaintiff was not married, she would be in big trouble, and that "instead of going to lunch we should just f***." She told Lyons that his comments were inappropriate and unwanted and asked him to stop.

10. On one occasion, on or about April 10, 2014, Lyons creepily hid in Plaintiff's office behind a file cabinet for about an hour and a half before letting Plaintiff know he had been hiding there and watching her.

11. In response to Lyon's behavior, Plaintiff told him that if he did or said something inappropriate again, she would report his conduct to Human Resources.

12. During this time, Plaintiff did report Lyons' comments and actions approximately three times to her supervisor, Josie Luongo-DeHart.

13. In or around April or May 2014, Lyons was transferred to the Main campus for about one (1) week. However, he returned to the East Campus on or about May 13, 2014, along with his wife who is also employed by Defendants and had worked at the Main campus. Upon Lyons' return to the East Campus, Plaintiff told Lyons that she hoped things would remain professional going forward. Lyons agreed.

14. However, that afternoon, Plaintiff was called into the HR Office and told by Bill Peterson, HR Manager, that Lyons had complained that Plaintiff was allegedly sexually harassing him. Plaintiff told Peterson that such allegation was false and that, to the contrary, Lyons was actually sexually harassing her. She also informed Peterson that she had asked Lyons on multiple occasions to stop.

15. Plaintiff also told Peterson about Lyons' former sexual relationships with employees and that he had sexual relations with co-workers during working hours in the hospital. Rather than addressing Plaintiff's complaints, Peterson turned the interrogation on Plaintiff, asking if she had ever touched Lyons' shoulder. Plaintiff replied that she may have gotten his attention earlier that day by tapping his shoulder with her finger. Despite Plaintiff's efforts to make Peterson aware of her own complaints of Lyons' inappropriate sexual conduct, Peterson was dismissive and disinterested in Plaintiff's reports.

16. The following day, on or about May 14, 2014, Plaintiff was called back into

the HR Office with Peterson and Health Information Director Amy Box where Plaintiff was chastised for allegedly talking about the meeting. However, Plaintiff had not been told that she could not speak with anyone about the situation and it was Plaintiff's supervisor who had questioned her about the meeting. Moreover, Plaintiff informed Peterson and Box that Lyons had discussed the situation with multiple co-workers.

17.     Peterson then told Plaintiff that he allegedly had video footage of Plaintiff touching Lyons' shoulder the previous morning. However, he refused to show Plaintiff the alleged video footage. Plaintiff reiterated that the only contact would have been when she may have tapped Lyons' shoulder to get his attention. Peterson then put Plaintiff on administrative leave and took Plaintiff's keys and badge. Significantly, however, other employees had been allowed to keep their keys and badge pending an investigation.

18.     Contrary to the manner in which Plaintiff was treated, Lyons was not placed on leave, but allowed to continue working.

19.     On or about May 20, 2014, Plaintiff received a phone call from Box, directing her to meet with Peterson and Box at the hospital the following morning at 8:00 a.m.

20.     The next morning, on or about May 21, 2014, Plaintiff met with Peterson and Box. Peterson told Plaintiff that due to a Facebook post, her administrative leave would continue. Plaintiff explained that she has her CNA license in three (3) states, has been practicing for over sixteen (16) years, and asked that Peterson be honest with her, as he had made it clear that he intended to terminate her.

5

6:15-cv-00065-RAW   Document 3   Filed in ED/OK on 02/16/15   Page 6 of 8

21.Plaintiff then left the meeting, but later returned to Peterson's office. Plaintiff asked what she needed to do to be allowed to return to work from leave. She stated that she wanted to keep her job. She also expressed her concern that if Peterson allowed her to return to work, she would still have to work with Lyons. And, she told Peterson that since Lyons had not been disciplined for his misconduct, she felt they had treated him in a preferential manner over her. In response, Peterson told Plaintiff she could write her resignation letter.

22.Plaintiff then stated that due to the discriminatory and retaliatory treatment she had experienced, and Peterson's statement concerning resignation, it was clear that she was not going to be allowed to return to work. Peterson then directed Plaintiff to write a statement and dictated to her that the statement reflect that she resigned, effective immediately, and to sign and date the statement.

23.As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I – Title VII

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

24.The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964, in the nature of gender discrimination, the creation of a sexually hostile work environment, sexual harassment and retaliation.

25.As damages, Plaintiff has suffered lost earnings, past and future, emotional

distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

26. Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT II -  Negligent Supervision, Training and Retention

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

27. The acts of Defendants, as described above, constitute the tort of negligent supervision, training and retention.

28. Defendants had a duty to properly supervise and train their employees to refrain from engaging in unlawful discrimination, harassment and retaliation.

29. Defendants breached their duty in allowing the discrimination, harassment and retaliation to occur and failing to properly train their employees.

30. At the critical time of the tortious incidents described herein, Defendants knew or should have known its employees, including, but not limited to Andy Lyons and Bill Peterson, would create an undue risk of harm to others.

31. As a direct and proximate cause of Defendants' negligence, Plaintiff was harmed.

32. As damages, Plaintiff is entitled to all damages allowed by state law.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 13th DAY OF FEBRUARY, 2015.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
EMILY VAN VOLKINBURG, OBA # 31744
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800      (telephone)
(405) 239-3801      (facsimile)
leonardjb@leonardlaw.net
emilyv@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED